```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                   :
JULIO C. LARA, et al.
                                   :

     v.                            :  Civil Action No. DKC 16-0145

                                   :
SUNTRUST MORTGAGE INC., et al.
                                   :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion to dismiss filed by Defendants SunTrust Mortgage, Inc. ("SunTrust Mortgage") and SunTrust Bank (collectively, the "Defendants"). (ECF No. 10). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I.   Background**

   **A.   Factual Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiffs Julio and Jeanette Lara (collectively, the "Plaintiffs"). Plaintiffs purchased a property at 5705 Jefferson Street, Riverdale, Maryland 20707 (the "Property") in January 2005. (ECF Nos. 2 ¶ 4; 10-2).[1] On November 30, 2005,

---

[1] In reviewing a motion to dismiss, the court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to

Plaintiffs refinanced their loan with SunTrust Mortgage, which was secured by a deed of trust. (ECF No. 10-3; *see* ECF No. 10-1, at 3). The deed of trust also secured a promissory note in favor of SunTrust Mortgage. (ECF No. 10-4).

According to Plaintiffs, in November 2011, they "wrote to Defendants to explain the financial difficulties which had befallen the family and that were preventing them from remitting their monthly payment of $1,680.00 on a timely basis. At this point, the Plaintiffs were no more than two to three months behind in their mortgage payments." (ECF No. 2 ¶ 4). In their opposition to Defendants' motion to dismiss, Plaintiffs assert that they sent SunTrust Mortgage a loan modification package in 2011, but heard nothing in response for several months. (ECF No. 14, at 3). In October 2012, Plaintiffs received a letter from Nohelia Knight, a home preservation client representative at SunTrust Mortgage, in which she introduced herself as Plaintiffs' new point of contact at SunTrust Mortgage. (ECF Nos. 2 ¶ 4; 10-10). Plaintiffs contend that they "promptly

---

the complaint and authentic. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Plaintiffs do not attach to the complaint documents related to the underlying foreclosure action. However, in their motion to dismiss, Defendants attach relevant documentation regarding the Property and the foreclosure proceeding and sale, and Plaintiffs do not contest the authenticity of the documents. Accordingly, the attached materials may be considered without converting the motion into one for summary judgment. *See Green v. Wells Fargo Bank, N.A.*, 927 F.Supp.2d 244, 246 n.2 (D.Md. 2013) ("A federal district court may take judicial notice of documents from state court proceedings and other matters of public record.").

telephoned [Ms. Knight] to confirm their receipt of the letter. [Ms. Knight] apologized that the [loan modification] process had taken so long, and stated that Defendants had misplaced the previous loan modification applications; the Plaintiffs sent by Federal Express all replacement and additional document requests on or before November 14, 2012." (ECF No. 2 ¶ 4).

On July 20, 2012, SunTrust Mortgage, through appointed substitute trustees, initiated a foreclosure proceeding against Plaintiffs in the Circuit Court for Prince George's County. (ECF Nos. 10-1, at 4; 10-6, at 3). Although affidavits of service were filed in the foreclosure action (*see* ECF No. 10-6, at 3), Plaintiffs contend that they "never received notice of the foreclosure sale as is required by law" (ECF No. 2 ¶ 4). In their opposition to the motion to dismiss, Plaintiffs allege that a November 8 notification of the foreclosure sale was the first notice they received of the foreclosure action. (ECF Nos. 14, at 4; 14-1, at 37). According to Plaintiffs, they called Ms. Knight after receiving this notice, and she informed them that "the [foreclosure] sale would not occur and that they should not worry" because they had submitted their loan modification application. (ECF No. 14, at 4). On February 1, 2013, the circuit court issued a "Final Order of Ratification," which ratified and confirmed the foreclosure sale of the Property. (ECF No. 10-7). Plaintiffs did not enter an

3

appearance in the foreclosure action until June 21, 2013, after which they filed several motions for reconsideration, which were ultimately denied. (ECF No. 10-6, at 4-7). On October 9, 2015, Plaintiffs filed an appeal to the Court of Special Appeals of Maryland. (*Id.* at 7-8).

### B. Procedural History

Plaintiffs commenced this action by filing a complaint in the Circuit Court for Prince George's County on November 30, 2015 (ECF No. 2), which Defendants timely removed (ECF No. 1). The complaint asserts four counts: breach of contract (Count I); fraudulent misrepresentation (Count II); breach of implied contractual covenant of good faith and fair dealing (Count III); and negligent processing of a loan modification application (Count IV). (ECF No. 1 ¶¶ 5-29). On February 25, 2016, Defendants filed the pending motion to dismiss, arguing for dismissal because of *res judicata* and because Plaintiffs have failed to state a claim. (ECF No. 10).[2] Plaintiffs responded in opposition. (ECF No. 14). Defendants have not replied, and the time to do so has expired.

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of*

---

[2] Defendants also argue that SunTrust Bank is not an appropriate defendant. Because Plaintiffs fail to state a claim, it is not necessary to reach this question.

*Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v.*

*Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**III. Analysis**

    **A.    Failure to State a Claim**

    **1.    Breach of Contract (Count I)**

The complaint alleges that "Defendants had a contractual obligation to, among other things, [] not foreclose on the Plaintiffs' property during the [loan] modification period." (ECF No. 2 ¶ 7). Plaintiffs appear to believe that their correspondence with SunTrust Mortgage employees regarding their loan modification application created a contractual duty not to foreclose on the Property. (*See* ECF No. 14, at 10). Defendants counter that Plaintiffs have failed to plead facts showing that a contractual relationship existed beyond the Note and Deed of Trust. Defendants assert that SunTrust Mortgage was simply exercising its right to foreclose under these contracts because Plaintiffs, as they admit, were behind on their payments. (ECF No. 10-1, at 12-15). Under Maryland law, "[t]o prevail in an

action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. Nationsbank, N.A.*, 365 Md. 166, 175 (2001) (citation omitted).

Plaintiffs' assert that they "entered into a contractual relationship with Defendants [because Defendants] accepted the Plaintiffs' request for, and related documents pertaining to their loan modification for evaluation and approval of a final loan modification agreement."  (ECF No. 2 ¶ 4).  Plaintiffs admit in their opposition, however, that they were merely "actively involved in promptly responding to numerous requests from Defendants by promptly submitting documents" and were corresponding with SunTrust Mortgage personnel regarding their application.  (ECF No. 14, at 10).  The submission of an application for a loan modification and other preliminary correspondence about SunTrust Mortgage's potential consideration of the application does not create an enforceable contract. *See Currie v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 788, 804 (D.Md. 2013); *Goss v. Bank of Am., N.A.*, 917 F.Supp.2d 445, 451 (D.Md. 2013).  Plaintiffs have not shown that Defendants had a contractual duty not to initiate foreclosure proceedings, and thus do not state a plausible breach of contract claim.

As to the alleged promise by Ms. Knight that SunTrust Mortgage would not initiate foreclosure proceedings, Defendants

7

argue that "to the extent that the parties entered into some oral agreement, the claim is barred by the Maryland Statute of Frauds." (ECF No. 10-1, at 15). The Court of Appeals of Maryland has held that the Statute of Frauds "prevent[s] the admission of parol evidence inconsistent with the terms of [a mortgage] contract." *Calomiris v. Woods*, 353 Md. 425, 445 (1999). Thus, any verbal modification to the loan that purported to prohibit SunTrust Mortgage from initiating foreclosure proceedings is unenforceable. Accordingly, Plaintiffs fail to state a breach of contract claim.

**2. Fraudulent Misrepresentation (Count II)**

Plaintiffs contend that Defendants "claimed to be acting in a fiduciary capacity [and] actively misled the Plaintiffs concerning certain matters, and omitted making other required disclosures." (ECF No. 2 ¶ 11). Defendants counter that Plaintiffs did not "identify any particularized facts, such as the time, place, and contents of any false representations or the identities of the wrongdoers" in the complaint. (ECF No. 10-1, at 16). Moreover, Defendants argue that Plaintiffs do not assert facts plausibly showing that they reasonably relied on any allegedly false assertions. (*Id.* at 16-17).

In Maryland, the elements of fraudulent misrepresentation are:

> (1) that the defendant made a false representation to the plaintiff, (2) that

8

>its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97 (2002).  In addition to satisfying Rule 8(a), a plaintiff asserting fraud "is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed.R.Civ.P. 9(b)).  The circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison*, 176 F.3d at 784 (citations and internal quotation marks omitted).  The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation.  *Id.*

In response to Defendants' motion to dismiss, Plaintiffs assert that "Ms. Knight, the appointed Spanish-speaking representative agent for Defendants, deceived [Plaintiffs] by

9

failing to disclose the complete facts regarding the loan modification process, even though [Plaintiffs] communicated with her in Spanish." (ECF No. 14, at 14). Plaintiffs further allege that they "reasonably relied on Ms. Knight's failure to disclose and false representation concerning the cancelation of the foreclosure sale." (*Id.*). This level of particularity is absent from the complaint, and the letter from Ms. Knight that is discussed in the complaint includes none of the allegedly fraudulent representations. (*See* ECF Nos. 2 ¶ 4; 10-10). Plaintiffs may not amend the complaint through an opposition to a motion to dismiss. The complaint's vague generalizations lack the particularity and specificity required by Rule 9(b). *See Spaulding*, 714 F.3d at 781.

Even if the complaint contained the particular allegations found in Plaintiffs' opposition, Plaintiffs still have not stated a plausible claim of fraudulent misrepresentation. As to the statements regarding the loan modification process, Plaintiffs have not pleaded facts showing that Ms. Knight's statements about the process were false or that Plaintiffs reasonably relied on the statements regarding loan modification to their detriment. *See Green*, 927 F.Supp.2d at 254-56. Although Plaintiffs contend that Ms. Knight's letter conveyed that their loan modification application was "under review," the letter said no such thing, either directly or indirectly. (ECF

No. 10-10). In regard to Ms. Knight's purported statement about the foreclosure sale being cancelled, Plaintiffs' conclusory allegations are not sufficient to show that Ms. Knight made the statement with the purpose of defrauding Plaintiffs. Furthermore, Plaintiffs have not shown that their reliance on this statement was reasonable and resulted in the foreclosure. *See Green*, 927 F.Supp.2d at 255 ("While Plaintiffs assert that they were lulled into a 'false state of comfort' by Defendant's representations, they do not allege . . . that Defendant specifically directed them to do, or to refrain from doing, anything that adversely affected the state of affairs that existed prior to the alleged misrepresentations."). Plaintiffs admit that they were behind in their payments (ECF No. 2 ¶ 4), and they have put forth no facts showing that, but for Ms. Knight's statement, they would have been able to satisfy the terms of the loan or would have been eligible for a loan modification in order to avoid foreclosure. *See Kaswell v. Wells Fargo Bank, N.A.*, No. RDB-13-2315, 2014 WL 3889183, at *6 (D.Md. Aug. 6, 2014) ("Plaintiff's status under his current loan was not impacted by his reliance on these supported misrepresentations because he was already in default before he applied for a loan modification."). Plaintiffs have not identified what actions they "would or could have taken in the foreclosure action absent the representations and/or whether any

11

such action could have been timely under applicable state law based on the date of the particular representation," *Butler v. Wells Fargo Bank, N.A.*, No. MJG-12-2705, 2013 WL 3816973, at *4 n.9 (D.Md. July 22, 2013), which was more than three months after the commencement of the foreclosure action and after the foreclosure sale was scheduled. (*See* ECF Nos. 14, at 4; 14-1, at 37). In *Butler*, 2013 WL 3816973, at *5 n.6, the court granted the defendant's motion to dismiss in a similar action despite the defendant's statement telling the plaintiff "not to worry about the sale, because she still qualified for the loan modification" and that "she absolutely would stay in the house." Accordingly, Plaintiffs' claims of fraudulent misrepresentation will be dismissed.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing (Count III)

Plaintiffs assert that Defendants breached the "covenant of good faith and fair dealing[, which] is implied in every contract." (ECF No. 2 ¶ 17). Specifically, the complaint alleges that SunTrust Mortgage "acted in bad faith by foreclosing on the Plaintiffs' home, not informing them of the foreclosure sale, [and] entering into a contractual relationship with Plaintiffs which Defendants knew it did [not intend] to perform." (*Id.* ¶ 19). Plaintiffs appear to contend that their loan modification negotiations with Ms. Knight gave rise to a duty of good faith and fair dealing. (ECF No. 14, at 16).

"Maryland law recognizes an implied covenant of good faith and fair dealing in all negotiated contracts. But the covenant of good faith and fair dealing 'does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract].'" *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182-83 (4th Cir. 2000) (alteration in original) (citations omitted). Rather, the implied covenant of good faith and fair dealing is concerned with the "performance and enforcement" of the contract itself and "is simply a recognition of conditions inherent in expressed promises" of a contract. *Blondell v. Littlepage*, 413 Md. 96, 114 (2010) (quoting *E. Shore Markets*, 213 F.3d at 184).

Here, as described above, Plaintiffs have not stated a breach-of-contract claim or alleged facts showing that Defendants violated any contractual duty whatsoever. Absent some contractual obligation that Defendants breached, "all that is left is a standalone 'violation of the duty of good faith,'" which is not recognized as a cause of action in Maryland. *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, No. DKC-11-1948, 2014 WL 3865993, at *4 (D.Md. Aug. 5, 2014) (citing *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 170 Md.App. 457, 471-72 (2006)); *see Melanie Wright v. Nationstar Mortgage, LLC*, No. PJM-14-3991, 2016 WL 1077164, at *6 (D.Md. Mar. 18, 2016) ("Maryland law does not recognize a second cause of action for

13

breach of implied covenant separate from a breach of contract claim in general. Since Plaintiff cannot establish a breach of contract claim based on her allegations, she cannot maintain a breach of implied covenant claim."). Accordingly, Count III will be dismissed.

### 4. Negligence (Count IV)

In Count IV, Plaintiffs allege that Defendants were negligent in the processing of their loan modification application. To state a claim of negligence, a plaintiff must plausibly allege: "(1) that the defendant was under a duty [to the plaintiff], (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 290-91 (2006) (citations and internal quotation marks omitted). Defendants assert that they did not owe Plaintiffs a duty in relation to the loan modification application.

In Maryland, "[i]t is well established that 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature.'" *Kuechler v. Peoples Bank*, 602 F.Supp.2d 625, 633 (D.Md. 2009) (quoting *Yousef v. Trustbank Savs., F.S.B.*, 81 Md.App. 527 (1990)). "'[C]ourts

14

have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement.'" *Currie*, 950 F.Supp.2d at 803 (citing *Parker v. Columbia Bank*, 91 Md.App. 346 (1992); *21st Century Props. Co. v. Carpenter Insulation and Coatings Co.*, 694 F.Supp. 148, 151 (D.Md. 1988)).  In *Currie*, the court dismissed the plaintiffs' negligence claims because the case was "a typical, arm's length creditor/debtor relationship founded on a mortgage loan," and the plaintiffs did not identify any special contractual language imposing a tort duty on the defendants.  *Id.* at 803-04.  Much as in *Currie* and *Kuechler*, Plaintiffs have not alleged the existence of special circumstances imposing a duty on Defendants beyond the contractual duties in the Note, Deed of Trust, and loan.

Although not included in the complaint, Plaintiffs' opposition alleges that Defendants were negligent *per se* because they violated Md. Code Ann., Real Prop. § 7-105.1.  (ECF No. 14, at 17).  Even if properly pleaded, Plaintiffs' argument is unpersuasive because § 7-105.1 "contemplates procedures and duties that arise *after* a foreclosure sale or ratification." *Stewart v. Bierman*, 859 F.Supp.2d 754, 767 (D.Md. 2012); *see also Currie*, 950 F.Supp.2d at 803-04 (dismissing a similar

15

negligence claim based on § 7-105.1).  The complaint, however, alleges that Defendants were negligent *leading up to* the foreclosure sale, not in the sale itself or in the procedures following the sale.  Accordingly, Plaintiffs have not stated a claim of negligence *per se*.

    **B.**   *Res Judicata*

In the alternative, Defendants argue that, to the extent the complaint puts forth plausible claims, they are barred by *res judicata* because Plaintiffs are attempting to relitigate claims that should have been brought in the state-court foreclosure action.  (ECF No. 10-1, at 8-11).  Plaintiffs' attempt to counter Defendants' *res judicata* argument is not entirely clear; they assert that two issues "were not litigated in the prior foreclosure case . . . (1) ratification of the sale, and (2) eviction of [Plaintiffs] from [the Property]." (ECF No. 14, at 8).

An affirmative defense such as *res judicata* may be raised under Rule 12(b)(6) "only if it clearly appears on the face of the complaint" and when the plaintiff does not dispute the factual accuracy of the record in the previous action.  *See Andrews v. Daw,* 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citations and internal quotation marks omitted); *see also Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (reserving the defendants' *res judicata* defense for

16

summary judgment because it did not appear on the face of the complaint). *Res judicata* is applicable in a foreclosure action only "absent claims that the unsuccessful party was prevented from fully exhibiting her case by her opponent's extrinsic fraud or deception, such as by keeping her away from the court or keeping her in ignorance of the proceedings." *Turner v. JPMorgan Chase, N.A.*, No. TDC-14-0576, 2014 WL 4843689, at *8 (D.Md. Sept. 25, 2014). Here, despite the state-court docket indicating that certificates of service were filed, Plaintiffs dispute that they received notice of the foreclosure action until after the sale was scheduled in November 2012. (ECF Nos. 2 ¶ 4; 14, at 4). A defendant has the burden of establishing an affirmative defense such as *res judicata*. Although *res judicata* may have ultimately foreclosed Plaintiffs' claims if they survived to summary judgment, Defendants have failed to meet their burden at the motion to dismiss stage. Accordingly, based on the current limited record, and taking the allegations in the complaint as true, *res judicata* is not appropriate.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
